## TRAIN *v.* TRAIN.

DIVORCE—DESERTION—HUSBAND'S CRUELTY JUSTIFIES WIFE'S LEAVING HIM.

> The decree of the court below dismissing the husband's suit for divorce on the ground of desertion was justified, where the evidence showed that the wife was justified in leaving him because of his cruelty.[1]

Appeal from Kalamazoo; Weimer (George V.), J.    Submitted October 8, 1925.  (Docket No. 38.) Decided December 22, 1925.

Bill by Heman J. Train against Cora Anson Train for a divorce.    From a decree dismissing the bill, plaintiff appeals.    Affirmed.

*Frost & Frost,* for plaintiff.

*Stearns & Kleinstuck,* for defendant.

MCDONALD, C. J.    This bill of complaint was filed

---

[1] Divorce, 19 C. J. § 183.

by the plaintiff to obtain a divorce from the defendant on the ground of desertion. The case was heard on bill and answer. The court entered a decree dismissing the bill. The plaintiff has appealed.

The parties were married on the 4th day of November, 1895, and lived together until February 3, 1919. Two children were born of the marriage, both of whom are of age and are now married. The defendant admits that on the 3d day of February, 1919, she left the plaintiff and has not since lived or cohabited with him, but claims that she was justified in doing so because of his persistently cruel treatment. The defendant was a witness at the hearing and testified as follows:

"*Q.* Why did you separate from Mr. Train?
"*A.* Because he was so cruel I couldn't stay with him. In the past, he had told me a number of times to leave, and that I must leave, and often before he commenced to beat me he told me to leave and after he commenced to beat me he was so cruel and so disagreeable and so violent that I couldn't stay there alone with him."

On the day she left him she says:

"And he struck me and pushed me up against the side of the house and put his hand on my throat and called me a vile name, and he turned me around in some manner and pushed me back across the dining room against a kettle of milk and water there for the calf, pushed me against that, spilling the contents over on my feet, and when he had me against the wall and he threatened to smash my brains and jam my head through the wall, and he told me I must leave. If I didn't go he would kick me out. * * *
"I had a headache afterwards. It gave me a headache and I was very nervous and very excited."

Other acts of personal violence and the use of profane and obscene language in addressing her were testified to by defendant. Of these the plaintiff made no positive denial. He testified:

"Q. Just what was that violence you used on her? What did you do to her?

"A. Why, I don't know but once or twice I might have slapped her a little, I think I did.    *    *    *

"Q. Do you remember running out of the house and swearing at her and calling her vile names?

"A. I might have.    I presume I did.    I do not remember of walking up the street and swearing and cursing and going at a pretty lively rate for an injured man.

"Q. Do you remember swearing so loud that the neighbors could hear you?

"A. They might have.    I wouldn't say they didn't.    *    *    *

"Q. Mr. Train, do you remember having fits of temper in which you would groan and swear and use vile names when just you and Mrs. Train were present in the house, and then when anybody came around, Mr. Blanchard or Wiswells, any of these, you would quiet right down.    Do you remember these occasions?

"A. I guess so.

"Q. As a matter of fact you treated Mrs. Train pretty brutally.    You either used vile language on her or would slap her, as you say, or you might have choked her?

"A. I didn't choke her.

"Q. Well, you used pretty rough means in handling her, didn't you?

"A. I don't think that I hurt her very much."

In view of the positive testimony of the defendant and the admissions and feeble denials of the plaintiff, we are impelled to find that he was guilty of such cruel conduct as justified the defendant in leaving him. She was not guilty of desertion.

"Desertion, under the statute, is the wilful abandonment of one party by the other without cause, and against the will of the party abandoned, for the period of two years.    If the husband's conduct is so so cruel towards his wife that she cannot live and cohabit with him with safety to her health, or without peril to her life, or if she has good reason to believe she cannot, and for such reason she leaves him and abandons his home, she does not thereby commit the

crime of desertion.    In such case she does not leave her husband or her home in consequence of any wilfulness on her part, but is compelled by the cruelty of her husband, and against her will, so to do.   The desertion in such case is upon his part, and not upon hers.    He as completely commits the crime of desertion when, by his cruel conversation and conduct, he compels her for safety to leave him and his home, as when he wilfully and without cause leaves and abandons her."    *Warner* v. *Warner,* 54 Mich. 492.

The circuit judge correctly disposed of the case.

The decree is affirmed, with costs to the defendant.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.